THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME WILLIAMS, Defendant-Appellant.

First District (6th Division)   No. 1—88—2850

Opinion filed February 21, 1992.

Randolph N. Stone, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William P. Pistorius, and David B. Franks, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

Defendant Jerome Williams was convicted of three counts of aggravated battery and one count of armed violence. He was sentenced to 15 years in prison on the armed violence conviction, the term to run consecutively with an unrelated three-year conviction for possession of a controlled substance and concurrently with an unrelated 20-year murder conviction.

Defendant's appeal does not involve the propriety of the aggravated battery and armed violence convictions *per se* but asks this court to vacate defendant's conviction because he did not waive representation by a "conflict-free" attorney, who at the time of defendant's trial had a disciplinary proceeding pending against him before the Illinois Supreme Court.

Prior to defendant's trial, the Illinois Supreme Court ordered that the law license of Leo Fox, defendant's counsel, be suspended for 18 months because of his failure to prosecute two appeals. Fox filed a petition for rehearing and that petition was pending when defendant's armed violence case went to trial. Therefore, at the time of trial, counsel was licensed to practice law in the State.

On the day of defendant's trial, May 18, 1988, defendant and counsels for defendant and the State appeared in chambers together with the trial judge to apprise defendant of Fox's situation. Though no court reporter was present, the parties stipulated to a

written re-creation of what occurred in chambers. The stipulation read:

"On May 18, 1988, Jerome Williams, his attorney Leo Fox, and Assistant State's Attorney Edward Ronkowski met in the chambers of Circuit Court Judge Romie Palmer. No court reporter was present.

Judge Palmer informed Jerome Williams his attorney was under investigation and that Mr. Fox's license may be suspended as a result of the investigation. Judge Palmer did not disclose the nature of the investigation. Judge Palmer wanted Jerome to know about the investigation so Jerome could decide whether he still wished Fox to remain his attorney. Judge Palmer informed Jerome Williams that if he no longer wanted Mr. Fox to continue as counsel, Jerome could have a continuance to obtain new counsel. It is Assistant State's Attorney Edward Ronkowski's recollection that Judge Palmer also told Jerome if he could not afford counsel one would be appointed. Neither Judge Palmer [n]or Mr. Fox recall whether Judge Palmer did or did not make this statement; however, it was Judge Palmer's practice to include this court appointed counsel admonition in similar situations.

Jerome Williams answered Judge Palmer's question by stating 'Yes' he wanted Mr. Fox to continue to be his lawyer. Judge Palmer told Jerome that by answering 'Yes' he couldn't thereafter use Mr. Fox's professional problems on appeal. Jerome Williams then asked Judge Palmer whether Mr. Fox was eligible to represent him (Williams). Judge Palmer answered 'Yes.'

Whereafter, the parties returned to the courtroom. (Stipulated Statement of facts.)"

In open court Judge Palmer admonished defendant again with regard to his counsel's pending disciplinary proceeding. The following colloquy occurred:

"THE COURT: I would like to admonish him a little bit more. Can I do that? Any objection to me doing this?

[DEFENSE COUNSEL]: No, sir.

THE COURT: Mr. Williams, you were in the chambers not too long ago with your attorney, and the State's Attorney, is that correct, and the Court? At that time I advised you as to certain things relating to your attorney. Is that right?

MR. WILLIAMS: Yes.

THE COURT: And I also advised you, I believe I did, that if for some reason this matter comes up, you were convicted and this matter comes up in the future, you would have then waived your right to bring this up as a matter of appeal, insofar as the attorneys' [sic] qualifications. Do you recall that?

MR. WILLIAMS: Yes.

THE COURT: I'm again advising you. Do you understand that?

MR. WILLIAMS: Yes.

THE COURT: I asked you then, do you want your attorney to represent you?

MR. WILLIAMS: Yes.

[DEFENSE COUNSEL]: For the record, by your attorney you are referring to me, Leo Fox?

MR. WILLIAMS: Yes."

Defendant then waived his right to a jury and his trial proceeded. The trial judge found defendant not guilty of attempted murder and guilty of one count of armed violence and three counts of aggravated battery. The trial judge set the sentencing for June 2, commenting to defendant that: "I understand we are continuing it to June 2. Mr. Williams, this case, Counsel may not be able to finish it. Do you understand it? *** That he may have to bring in another attorney or a Public Defender. You understand that? *** That is agreeable?" Three times defendant responded, "Yes."

Fox's license was suspended for 18 months on April 25, 1988.

On June 2, 1988, defendant appeared before the trial court and agreed to be represented by a public defender. The trial judge admonished defendant: "The attorney that you had will not be representing you. *** You were admonished before that he might not represent you at the sentencing, is that correct?" The defendant responded in the affirmative and stated that he wanted the public defender to represent him at the sentencing.

On August 19, 1988, defendant, represented by a public defender, was sentenced to 15 years. His motion for a new trial was also denied and the court noted that Fox's involvement in the case was not grounds for reversal.

On appeal, defendant contends he is entitled to a new trial without regard to his trial counsel's actual performance because he did not waive his right to be represented by conflict-free counsel. Defendant concedes that "[a] review of the appellate record reveals Mr. Fox's performance was within acceptable perameters." However, defendant contends that in certain circumstances, citing *Peo-*

*ple v. Williams* (1982), 93 Ill. 2d 309, 444 N.E. 2d 136, pending disciplinary proceedings against defendant's counsel may subject defendant to representation by an attorney with an actual or possible conflict of interest.

In *Williams*, defendant was sentenced to death following his conviction for murder, rape and aggravated kidnapping. The supreme court upheld the conviction but reconsidered defendant's case when defendant's petition for rehearing detailed his attorney's subsequent disbarment. The supreme court ordered a new trial for Williams because the court found that though his counsel's trial court actions were competent it could not say with "any degree of assurance" that defendant had received effective assistance of counsel. *Williams*, 93 Ill. 2d at 324.

The *Williams* court noted the unique circumstances of the *Williams* case because defendant's counsel had represented three defendants in capital cases before two juries simultaneously. The court characterized the circumstances as "unique" and stated that the "sequence of events in this capital case, \*\*\* will rarely, if ever, be duplicated." *Williams*, 93 Ill. 2d at 325.

Defendant urges this court to find, first, that defendant's counsel too faced a conflict of interest and, second, that defendant did not waive his right to representation by conflict-free counsel.

■■ A defendant is not required to show prejudice to his case in order to justify reversal of his conviction where his counsel has had an actual or possible conflict in professional conduct. (*People v. Thomas* (1989), 131 Ill. 2d 104, 545 N.E. 2d 654.) A defendant may waive his right to a conflict-free counsel if the court admonishes defendant regarding the existence and the significance of the conflict and takes into consideration the defendant's background, experience and conduct. *People v. Olinger* (1986), 112 Ill. 2d 324, 339, 493 N.E. 2d 579; *People v. Washington* (1984), 101 Ill. 2d 104, 114, 461 N.E. 2d 393.

Defendant asks this court to find defendant's counsel had a conflict of interest and contends the record is devoid of any statement as to the nature of the conflict, a consideration of Williams' background and an indication that Williams was told the nature of his lawyer's disciplinary charges and what effect it might have on defendant.

Defendant contends that in light of this court's decision in *People v. Washington* (1990), 210 Ill. App. 3d 147, 568 N.E. 2d 1279, this court should find defendant did not waive his right to representation by a conflict-free attorney. The *Washington* court relied on

*Williams* and held that defendant's counsel had a conflict of interest because he had a disciplinary proceeding pending before the Attorney Registration and Disciplinary Commission at the time of defendant's trial. The appellate court found defendant did not waive his right to a conflict-free counsel and ordered the case reversed and remanded. However, after briefs were filed in this case, the supreme court vacated and remanded the *Washington* decision to the appellate court. *People v. Washington* (1991), 142 Ill. 2d 663, 582 N.E. 2d 183.

The State contends that, even if we were to find that a conflict existed, the stipulated facts establish defendant voluntarily waived his right to representation by a conflict-free counsel. The State argues that defendant was advised that defense counsel might be suspended from the practice of law, putting defendant on notice that his counsel might not be able to represent him at a later date. The trial judge offered him the opportunity to seek and obtain other counsel and indicated that he would grant a continuance should defendant wish to do so. The State contends that defendant was admonished repeatedly about the situation and warned that his counsel's disciplinary case could not be raised on appeal.

The State contends that defendant was not represented by counsel facing a conflict of interest and that the *Williams* case is factually distinguishable from defendant's case. The State notes that the supreme court characterized *Williams* as a "rarely, if ever *** duplicated" capital case where the attorney represented three defendants in two trials held simultaneously. In addition, the attorney in *Williams* never appeared before the Attorney Registration and Disciplinary Commission on his own case and explained later to the supreme court that he "did not feel mentally or physically capable of presenting his case." *In re Weston* (1982), 92 Ill. 2d 431, 436, 442 N.E. 2d 236.

In support of its position, the State cites *People v. Perry* (1989), 183 Ill. App. 3d 534, 540 N.E. 2d 379, where the appellate court rejected the argument made by defendant that the mere pendency of disciplinary proceedings brands an attorney incompetent to defend a person charged with a crime. (*Perry*, 183 Ill. App. 3d at 540.) As the court aptly noted, the fact that attorneys still are permitted to continue practicing law until they are suspended or disbarred "is a clear answer to that argument." *Perry*, 183 Ill. App. 3d at 540.

This identical argument was also rejected in *People v. Long* (1990), 208 Ill. App. 3d 627, 567 N.E. 2d 514, and *People v. Bernardo* (1988), 171 Ill. App. 3d 652, 525 N.E. 2d 857. In

*Bernardo,* the appellate court rejected defendant's contention that *Williams* established a *per se* rule permitting all criminal defendants a new trial when their attorneys are subject to disbarment proceedings. *Bernardo,* 171 Ill. App. 3d at 659.

The appellate court in *Perry, Long* and *Bernardo* instead found defendants' counsel's conduct proper by applying the standard used to review an ineffective assistance of counsel claim as enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

In *Strickland* the court stated that a defendant must show that his counsel's performance was so deficient that it fell below an objective standard of reasonableness and that the performance prejudiced the defense of the case. (*Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) The *Strickland* standard was adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E. 2d 1246.

The supreme court, aware of the anomaly it created, emphasized the limitations of *Williams* in *People v. Szabo* (1991), 144 Ill. 2d 525, 529-30, 582 N.E. 2d 173. In *Szabo,* not decided at the time the parties filed briefs in this case, the defendant contended that he should be granted a new trial solely on the basis of his attorney's disciplinary troubles. The defendant relied on *Williams,* but the court held that "the *Williams* decision was an aberration peculiar to the facts of that case." (144 Ill. 2d at 529.) Two days after *Szabo* was published, the court vacated the *Washington* decision, citing the *Szabo* decision in support of its action.

■ We find defendant's case in line with *Szabo, Perry, Long* and *Bernardo* where the courts found no unique circumstances such as existed in *Williams* to warrant a departure from the *Strickland/Albanese* standard. Defendant was advised fully in chambers and again in open court prior to trial. He repeatedly indicated to the court that he wished Fox to represent him and at no time expressed dissatisfaction with his counsel's representation. Defendant acknowledges in his appellate brief that a review of the appellate record reveals "Mr. Fox's performance was within acceptable parameters." Defendant has pointed to no deficiencies in his counsel's representation. Our review of the trial record establishes that counsel's performance did not fall below the *Strickland/Albanese* objective standard of reasonableness nor did his representation prejudice the defendant. We find no grounds to reverse the decision of the trial court because of defense counsel's disciplinary problems.

■ Defendant also asks this court to order a resentencing of his case if his murder conviction in an unrelated case is reversed on appeal. This court affirmed the murder conviction in an unpublished opinion (*People v. Williams* (1st Dist. 1990), No. 1—88—1303 (unpublished order under Supreme Court Rule 23)) and therefore this issue is moot.

We therefore affirm defendant's conviction and 15-year sentence for armed violence.

Affirmed.

McNAMARA and RAKOWSKI, JJ., concur.