# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Gamino*, 2012 IL App (1st) 101077

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FILADELFO GAMINO, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-1077 |
| Filed | June 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's postconviction petition alleging that he was denied effective assistance of counsel in his murder trial because his attorney had been placed on interim suspension from practicing law pursuant to a disciplinary proceeding based on her legal ability or moral character was reversed and the cause was remanded for a third-stage evidentiary hearing to resolve the factual dispute as to when her suspension became effective, and if she was suspended during the trial, defendant's petition must be granted and he must be awarded a new trial, but if she was allowed to practice law, a *Strickland* analysis applied and the dismissal should be reinstated based on the trial court's finding that counsel was not ineffective, since a criminal defendant unknowingly represented by an attorney disbarred or suspended for a reason relating to a lack of legal ability or moral character suffers a *per se* violation of his right to effective assistance of counsel. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 97-CR-3252; the Hon. Carol A. Kipperman, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Manuel S. Serritos, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Tracey K. Annen, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.<br>Presiding Justice Lavin and Justice Sterba concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant Filadelfo Gamino appeals from the second-stage dismissal of his postconviction petition. On appeal, defendant contends that he was denied effective assistance of counsel at his trial for first-degree murder when his trial counsel concealed from him the fact that disciplinary proceedings were pending against her and she had been placed under interim suspension from the practice of law prior to his trial. We reverse and remand for a third-stage evidentiary hearing to resolve the factual dispute of whether his trial counsel was suspended and unauthorized to practice law during his trial.

¶ 2      Defendant was charged with the first-degree murder of Jesus Sandoval, who was fatally shot in a street confrontation between two rival gangs. Sandoval was a member of the Almighty Bishops street gang and defendant was a member of the Latin Counts. Defendant was represented in the circuit court by attorney Julie McBride. His bench trial began on April 16, 1997. One State witness, a police officer, testified that he spoke with defendant on December 26, 1996. Defendant told the officer he heard from a friend that two other members of the Latin Counts had shot and killed Sandoval. Another officer testified that in the following month defendant came to the police station voluntarily and made an oral statement, which was reduced to writing and signed by defendant. In his statement, defendant admitted he fired the shot that fatally wounded Sandoval on December 14, 1996. At about 9:30 p.m. on that date, defendant and Rigaberto Castaneda, another Latin Counts member, were walking near a park in Cicero when defendant went into a gangway and found a .357-caliber handgun hidden under some garbage. Then defendant and Castaneda stood on the sidewalk talking with friends when a Chevrolet Tahoe approached them. Defendant

-2-

recognized the vehicle as one used by the Almighty Bishops street gang. The occupants of the Tahoe began throwing beer bottles at defendant and Castaneda. Defendant ran into a gangway, retrieved the .357-caliber handgun, and returned to the street. An individual threw a beer bottle that grazed defendant's head. Defendant fired one shot at the person who threw the bottle and saw that man fall to the ground behind the Tahoe. Believing the Tahoe occupants were going to continue the dispute, defendant fired two more shots at the Tahoe before running from the scene.

¶ 3    In his defense at trial, defendant testified that he and other Latin Counts members were walking near the park on the date in question. Defendant went into a gangway and located a .357 Magnum handgun that his gang, the Latin Kings, kept there. He moved the gun to a safer place in the gangway and was returning to the sidewalk when a sport utility vehicle pulled up and rival gang members jumped out. Defendant took two steps back into the gangway and retrieved the gun. The rival gang members began throwing beer bottles and one of the bottles grazed defendant's head, spraying beer on his face and into his eyes. Defendant testified that "the gun went off almost half a second after that bottle hit [him]." He fired three more shots "in the direction of all the yelling," and then he ran away.

¶ 4    The court found defendant guilty of first degree murder. After announcing its findings, the court complimented McBride on "a particularly excellent job" in representing defendant.

¶ 5    On May 27, 1997, the circuit court sentenced defendant to a prison term of 35 years. At the sentencing hearing, the court stated: "Attorney Julie McBride did an excellent job of representing the defendant and was well prepared in her actions and represented her client well."

¶ 6    On direct appeal, the sole issue defendant raised was that the circuit court abused its sentencing discretion by failing to give adequate consideration to several mitigating factors. We affirmed the judgment of the circuit court. *People v. Gamino*, No. 1-99-0383 (1999) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7    On May 26, 2000, defendant filed a *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2000)). Claiming the denial of effective assistance of counsel, defendant's petition alleged that his trial counsel, Julie McBride, was the subject of attorney disciplinary proceedings and was placed on interim suspension from practicing law on March 21, 1997, prior to defendant's bench trial. The petition also contended that McBride was ineffective in that she failed to make a pretrial motion to suppress statements, interview potential witnesses, prepare witnesses for testimony, or file a posttrial motion to reduce sentence. The petition further alleged that McBride was disbarred from the practice of law on December 12, 1997, and her petition for reinstatement was denied on July 6, 1998. The following documents were appended to the postconviction petition:

    Letter dated May 16, 2000, addressed to Theresa Belcastro, from a senior paralegal with the Attorney Registration and Disciplinary Commission (ARDC), stating that ARDC records indicated: Attorney Julie McBride was served with a formal complaint relating to her attorney disciplinary matter on December 19, 1995; a hearing was held before the Hearing Board on August 15-16, 1996; the Hearing Board issued a report on December 17, 1996, recommending that McBride be disbarred; McBride filed exceptions

before the Review Board; on December 12, 1997, the Review Board also recommended that McBride be disbarred; McBride filed a petition in the Illinois Supreme Court, requesting leave to file exceptions to the Review Board's recommendation; and on July 6, 1998, the supreme court denied the petition and disbarred McBride. The letter also stated that "on March 21, 1997, Julie McBride was suspended on an interim basis pursuant to Illinois Supreme Court Rule 774";

    Illinois Supreme Court Rule 774, "Interim Suspension" (eff. March 25, 1991);

    Affidavits from defendant, his father and his mother, and a friend, Theresa Belcastro; and

    Certified copy of "Report and Recommendation" of the ARDC Review Board, filed December 12, 1997, recommending that McBride be disbarred.

¶ 8    The court appointed counsel to represent defendant in the postconviction proceedings. On October 9, 2009, an assistant public defender filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984), stating that she had consulted with defendant, his *pro se* petition adequately presented his issues, and a supplemental petition would not be presented.

¶ 9    On January 22, 2010, the State filed a motion to dismiss defendant's postconviction petition, responding to allegations of ineffectiveness of defendant's trial counsel. In response to defendant's claim that his trial counsel was under interim suspension during his trial, the State attached to its motion a written order of the Illinois Supreme Court dated May 30, 1997, in the matter of McBride's disciplinary proceedings. The order stated: "The rule to show cause that issued to respondent Julie Jane McBride pursuant to Supreme Court Rule 774 on March 21, 1997, is enforced, and respondent is suspended from the practice of law effective immediately and until further order of Court."

¶ 10    On April 9, 2010, the circuit court granted the State's motion to dismiss defendant's postconviction petition. The court ruled that the claimed instances of ineffective assistance of trial counsel involved matters of trial strategy, and that defendant's claim that his counsel failed to investigate his case was unsupported by affidavit of any witnesses. The court made no reference to defendant's claim that his trial attorney's license to practice law had been suspended when she represented defendant at his trial.

¶ 11    On appeal, defendant contends that his representation at trial by an unlicensed attorney constituted *per se* ineffectiveness of counsel as a matter of law. The State responds that a *per se* rule of ineffectiveness of counsel is inappropriate and that the correct standard is the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Strickland* requires a showing of both deficient performance by counsel and prejudice to the defendant from the deficient performance. *People v. Hodges*, 234 Ill. 2d 1, 17 (2009); *People v. Johnson*, 218 Ill. 2d 125, 143-44 (2005).

¶ 12    At the second stage of postconviction proceedings under the Act, the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The State may file a motion to dismiss or an answer to the petition, and the court must then determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *People v. Wilborn*,

2011 IL App (1st) 092802, ¶ 61. The trial court is foreclosed from engaging in fact-finding at this stage because all well-pleaded facts are to be taken as true unless they are rebutted by the record. *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009). Unless a substantial showing of a constitutional violation is established by the allegations in the petition, supported by the trial record and accompanying affidavits, the defendant is not entitled to an evidentiary hearing. *People v. Harris*, 206 Ill. 2d 293, 299-300 (2002). The dismissal of a postconviction petition at the second stage is a question of law, which we review *de novo*. *People v. Simpson*, 204 Ill. 2d 536, 547 (2001).

¶ 13     Defendant contends he was entitled to an evidentiary hearing because he made a substantial showing of a constitutional deprivation sufficient to advance his petition to the third stage of the postconviction proceedings when he demonstrated that he "had an unlicensed and unqualified attorney representing him at his trial." For the following reasons, we agree.

¶ 14     No Illinois court has previously considered the appropriate standard to apply in evaluating the adequacy of a criminal defendant's representation by an attorney who was suspended or disbarred at the time of defendant's trial. Instead, we have held only that the performance of an attorney subject to disciplinary proceedings while engaged in the representation of a criminal defendant should be evaluated under *Strickland*. See, *e.g.*, *People v. Bernardo*, 171 Ill. App. 3d 652, 660 (1988); *People v. Szabo*, 144 Ill. 2d 525, 529-31 (1991); *People v. Chatman*, 357 Ill. App. 3d 695, 703 (2005).

¶ 15     In the case *sub judice*, however, defendant contends McBride was not merely subject to disciplinary proceedings, but in fact was suspended from the practice of law during his trial that commenced on April 16, 1997. Specifically, defendant alleges McBride was subject to an interim suspension pursuant to Illinois Supreme Court Rule 774 (eff. July 1, 1984), beginning March 21, 1977, after which date she was not authorized to practice law.

¶ 16     A suspended or disbarred attorney stands in stark contrast to one who is merely under investigation. Indeed, the former is not entitled to the label "counsel," as our supreme court has held that "for constitutional purposes, the term 'counsel' means '*a duly licensed and qualified lawyer*, and not an attorney in fact or a layman.' " (Emphasis added.) *In re Denzel W.*, 237 Ill. 2d 285, 296 (2010) (quoting *People v. Cox*, 12 Ill. 2d 265, 269 (1957)). Importantly, where an accused is not provided with counsel, no showing of prejudice is necessary before he is entitled to relief. *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984). Instead, it is only where counsel has been provided that we consider the inadequacy of representation and any resulting prejudice to defendant under the two-pronged *Strickland* inquiry. *People v. Allen*, 220 Ill. App. 3d 772, 781 (1991) (citing *Strickland*, 466 U.S. at 687). Accordingly, we hold that where a defendant is represented by a lawyer who is not licensed or qualified, the defendant has not been provided with "counsel" as defined by our supreme court and, consequently, a *Strickland* analysis is inappropriate.

¶ 17     Courts in other jurisdictions have employed similar reasoning to hold that where a criminal defendant is represented by an individual who is not licensed for reasons reflecting an incompetence to practice law (*Commonwealth v. Grant*, 2010 PA Super 45, ¶ 19), or for reasons going to the competency of the attorney to represent litigants or personal

characteristics of the attorney (*People v. Hinkley*, 238 Cal. Rptr. 272, 275 (Cal. Ct. App. 1987); *Solina v. United States*, 709 F.2d 160, 167 (2d Cir. 1983)), the defendant suffers a *per se* violation of his right to effective assistance of counsel.

¶ 18    *Solina* is particularly instructive. There, the Second Circuit Court of Appeals held that where, unbeknownst to the defendant, his representative was denied authorization to practice law, and this denial was for a reason going to legal ability or want of moral character, this amounted to a *per se* sixth amendment violation. *Id.* The court reasoned that one who practices law without a license is engaged in a crime, and "[s]uch a person cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials. Yet a criminal defendant is entitled to be represented by someone free from such constraints." *Id.* at 164; see also *United States v. Mouzin*, 785 F.2d 682, 699 (9th Cir. 1986) (noting that an individual perpetrating a fraud on the court may be wary of providing rigorous representation).

¶ 19    We distinguish the instant case from that of *People v. Williams*, 226 Ill. App. 3d 188 (1992), cited by the State. There, we declined to apply a *per se* rule of ineffectiveness where, prior to defendant's trial, the supreme court had ordered that defense counsel's law license be suspended, but where we suggested that the pendency of counsel's petition for rehearing authorized him to continue to practice law in Illinois during the trial of defendant's case. *Id.* at 189. The State also refers us to *People v. Allen*, 220 Ill. App. 3d 772, 781 (1991), which we also find inapposite. There, defense counsel's suspension had expired at the time the defendants' trial began, rendering him once again authorized to practice law. Here, in contrast, defendant alleges McBride was suspended both prior to and during the course of his trial. Therefore, just as in *Cox*, where a defendant was represented by a layman posing as a lawyer, defendant here was also without the benefit of representation by a "duly licensed and qualified lawyer," in contravention of his rights under the sixth amendment. See *Cox*, 12 Ill. 2d at 269; see also *Holloway v. Arkansas*, 435 U.S. 475, 489 (1978).

¶ 20    We also distinguish this case from that of *People v. Brigham*, 151 Ill. 2d 58 (1992), where our supreme court held that representation by an attorney who has been suspended for nonpayment of bar dues does not, standing alone, establish a violation of a defendant's sixth amendment right to counsel. Courts have frequently distinguished between defects in licensing that were merely technical, such as the nonpayment of dues, versus those that called into question an individual's ability to represent clients. *Solina*, 709 F.2d at 167; *Grant*, 992 A.2d at 159; *Hinkley*, 238 Cal. Rptr. at 275.

¶ 21    A similar distinction is appropriate here. McBride's suspension was not based on a mere technical licensing defect. Rather, according to defendant, from the time of McBride's application to the bar until her suspension and ultimate disbarment, she exhibited a pattern of dishonest behavior. For example, when applying to the Illinois bar, McBride failed to disclose a shoplifting conviction and provided false testimony before the Character and Fitness Committee. Subsequently, she misrepresented her social security number on bank credit applications, made false representations to avoid paying bills, and converted and commingled client funds. Taking these allegations as true, as we must for purposes of reviewing a second-stage postconviction proceeding (*People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009)), McBride failed to meet several substantive eligibility requirements for the

practice of law, including the requirements to conduct oneself reliably in fulfilling obligations to clients and creditors, and to use honesty and good judgment in financial dealings on behalf of oneself and others. Ill. S. Ct. R. 708(c)(7), (8) (eff. July 1, 2007). This type of conduct goes far beyond mere nonpayment of dues and reflects a lack of moral character that, coupled with her alleged suspension, ultimately rendered McBride incapable of providing effective assistance as a matter of law.

¶ 22    We therefore hold that a criminal defendant who is unknowingly represented by an individual who has been disbarred or suspended from the practice of law for any reason relating to lack of legal ability or moral character suffers a *per se* violation of his sixth amendment right to effective assistance of counsel.

¶ 23    Defendant also contends that the State's motion to dismiss was an inappropriate vehicle to litigate defendant's claim because an attachment to the postconviction petition, an ARDC letter stating that McBride was under interim suspension during defendant's trial, appeared to be contradicted by a supreme court order appended to the State's motion to dismiss, creating a factual dispute that only an evidentiary hearing could resolve. We concur. "Factual disputes raised by the pleadings *** can only be resolved through a third-stage evidentiary hearing." *People v. Jones*, 399 Ill. App. 3d 341, 357 (2010) (citing *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998)).

¶ 24    The relevant question here was whether McBride was under suspension and unauthorized to practice law when she represented defendant at trial. That critical fact was in dispute and unresolved by the trial court. Consequently, we reverse the trial court's order dismissing defendant's postconviction petition and remand this cause to the circuit court for a third-stage evidentiary hearing with directions to resolve the factual dispute as to when McBride's suspension became effective. If the court determines McBride's license was suspended during her representation of defendant in the instant case, the postconviction petition must be granted and defendant must be awarded a new trial. On the other hand, if the evidence at the hearing establishes that McBride was allowed provisionally to practice law during the time she represented defendant in the instant case and her suspension did not commence until after defendant's sentencing hearing, the appropriate standard is the *Strickland* analysis. As the circuit court previously has rejected defendant's allegations in his petition of inadequate representation by McBride, the appropriate remedy in that event would be to reinstate the dismissal of the postconviction petition.

¶ 25    Accordingly, we reverse the order dismissing defendant's postconviction petition and remand for a third-stage evidentiary hearing in accord with our directions.

¶ 26    Reversed and remanded with directions.